UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-23633-CV-WILLIAMS
MAGISTRATE JUDGE REID

TERRY EUGENE SEARS,

    Plaintiff,

v.

MICHAEL A. BAKER,
et al.,

    Defendants.

_____/

**REPORT OF MAGISTRATE JUDGE**

## I.    **Introduction**

Plaintiff, Terry Eugene Sears**,** has filed an amended *pro se* civil rights complaint, pursuant to 42 U.S.C. § 1983, raising numerous claims that the Defendants violated his civil rights while he was an inmate at the Dade Correctional Institution. ("Dade CI"). [ECF 19]. Plaintiff sues Captain Michael Baker, Lieutenant Lawanda Townsend, Sergeant Jose Marino and Sergeant Harriet Upshaw.

This case has been referred to the undersigned for issuance of all preliminary orders and recommendations to the district court regarding dispositive motions. *See*

28 U.S.C. § 636(b)(1)(B), (C), Fed. R. Civ. P. 72(b), S.D. Fla. Local Rule 1(f) governing Magistrate Judges, and S.D. Fla. Admin. Order 2019-02.

Plaintiff has paid the filing fee. However, because Plaintiff is a prisoner, seeking redress from governmental entities, employees, or officers, his complaint is subject to screening under 28 U.S.C. §1915A, which does not distinguish between IFP plaintiffs and non-IFP plaintiffs. *See* 28 U.S.C. §1915A; *Thompson v. Hicks*, 213 F. App'x 939, 942 (11th Cir. 2007)(*per curiam*).

## II.   **Factual Allegations**[1]

While Plaintiff was an inmate at the Dade CI he was subjected to harassment and beatings that were directed by corrections staff. On March 22, 2017, Plaintiff submitted an inmate grievance alleging a conspiracy to retaliate and obstruction of, and interfering with, the administration of justice in federal court. [ECF 19, p. 7]. According to Plaintiff, supervisory officials were instructing and orchestrating the inmates to harass him. [*Id*.] Defendant Sergeant Jose Marino was the dormitory supervisor and failed to stop the inmates conduct. [*Id*.]

On March 23, 2017, Plaintiff was assaulted and robbed by an unknown inmate. [*Id*.] Plaintiff sustained two small puncture wounds to his left cheek and his MP3 player was stolen. [*Id*.] He reported this attack to Defendant Townsend.

---

[1] For the purpose of screening this complaint, Plaintiff's allegations are taken as true.

Townsend told Plaintiff to "man up and handle your business." [*Id*.] Other than providing her name to Plaintiff, Townsend took no action on his complaint. [*Id*.]

As Plaintiff was on his way to the medical building he was stopped by Assistant Warden J. Jones who asked where he was going. [*Id*.] After Plaintiff explained what had happened Jones began arguing with him and ordered him to go to Gate One and wait. [*Id*., p. 8] This delayed Plaintiff from getting medical treatment. [*Id*.] Jones spoke with Defendant Baker for ten minutes. [*Id*., p. 8] Baker and two other officers escorted Plaintiff to H Dormitory. [*Id*.] Plaintiff advised Baker that he could identify the assailant via face sheet or in person, but he was ignored. [*Id*.] The inmates in H Dormitory called Plaintiff a snitch. [*Id*.]

On March 24, 2017, Plaintiff placed a sick call request, but he was never called to the medical department. [*Id*.] He was denied any medical care for the injuries sustained in the March 23 assault. [*Id*.]

On March 26, 2017, Plaintiff filed an informal grievance alleging that Lt. Townsend had abused her authority. [*Id*.] This grievance was returned with a statement that all the black female lieutenants had been interviewed and denied any knowledge of the incident. [*Id*.] On March 28, 2017, Plaintiff filed three informal grievances concerning the March 23, 2017 incident. [*Id*.] He alleged that corrections officers failed to protect him from assault and strong-arm robbery. [*Id*., p. 9 ]The

grievances were returned stating that the officer-in-charge and all female lieutenants stated they had no knowledge of the incident. [*Id*.]

On March 28, 2017, Plaintiff filed a medical grievance alleging that he had been systematically denied medical treatment. [*Id*.] In the grievance he complained that Jones, Baker and Townsend had been informed of the injuries he sustained in the March 23, 2017 assault. [*Id*.] This grievance was denied on April 5, 2017. [*Id*.]

On March 25, 2017, Plaintiff wrote a letter to his lawyer informing him of the details of the assault and robbery. [*Id*., p. 10] On April 14, 2017, Plaintiff's lawyer sent an e-mail to the warden requesting adequate medical treatment. [*Id*.] The e-mail was forwarded to Baker. [*Id*.] On April 18, 2017, an officer came to Plaintiff's dormitory and took him to see Baker. [*Id*.] Baker showed Plaintiff the e-mail and told Plaintiff that he had tried to locate the inmate who had attacked him and stole his MP3 player. [*Id*.] Plaintiff again told Baker that he could identify the individual. [*Id*.]

On April 24, 2017, Plaintiff paid inmate Willie Scaile $200 to get his MP3 player back. [*Id*.] According to Plaintiff, Baker had given the MP3 player to Scaile and allowed Plaintiff to be extorted for the return of the player. [*Id*., p. 11]

Plaintiff was harassed by the inmates in his dormitory. [*Id*.] Plaintiff's requests for a dormitory change were ignored although other inmates were moved from the dormitory. [*Id*.]. When new inmates arrived they also harassed Plaintiff.

[*Id.*]. On May 7, 2017, an inmate who is known as a "hitman" moved into the dormitory and began following Plaintiff. [*Id.*]. Plaintiff chose to skip meals to avoid interaction with the other inmates. [*Id.*]. However, Defendant Upshaw would place Plaintiff on the daily call out schedule for "fake" appointments in order to get Plaintiff outside his cell to certain locations where there were no cameras. [*Id.*].

On May 17, 2017, Plaintiff observed Upshaw and the purported "hitman" speaking privately for 15 minutes while waiting for a library pass. [*Id.*, p. 12].

On May 26, 2017, Baker, Townsend, Marino and Upshaw and two unknown female officers entered Plaintiff's dormitory and told all inmates that any excess property or legal materials not stored inside a locker would be confiscated. [*Id.*]. A note had been previously posted concerning this issue. [*Id.*]. Plaintiff advised Townsend that he had legal materials that would not fit in his locker and there was no storage space in the library. [*Id.*]. He showed Townsend an inmate request that had been provided by the librarian in the event there was any problem with his excess legal materials. [*Id.*]. Plaintiff asked Townsend her name. [*Id.*, p. 13]. She responded that he knew her name because he had told her about the March 23rd incident. [*Id.*]. Townsend was belligerent and called Plaintiff a snitcher and a homosexual, among other names. [*Id.*]. Townsend also threatened to have Plaintiff assaulted. [*Id.*]. On several occasions, other officers had to restrain Townsend and stood between her and Plaintiff. [*Id.*].

At approximately 3:15 p.m. on May 26, 2017, two inmates physically assaulted and robbed Plaintiff as he sat on his locker doing legal work. [*Id.*, p. 13-14]. Plaintiff's roommate joined in the attack and one of the other men was the person Plaintiff recognized as a known hitman who had been speaking to Upshaw on May 17. [*Id.*, p. 14]. Plaintiff was struck in the back, elbow, head and forearm several times. [*Id.*]. He was also punched in the face and kicked in the groin. [*Id.*]. The inmates also took all of Plaintiff's personal property. [*Id.*]. Plaintiff yelled for help to alert dormitory officers but none intervened. [*Id.*]. The beating continued for seventeen minutes. [*Id.*]. Plaintiff was locked in his room for twenty-five minutes. [*Id.*]. Although he kicked on the door, Defendant Marino failed to respond and all inmates ignored him. [*Id.* p. 15].

As a result of this attack, Plaintiff sustained a "busted lip," "swollen jaw," "knot in his head," cut elbow, as well as various cuts, bruises and abrasions. [*Id.*, p. 14]. The stolen property consisted of a watch, digital radio, MP3 player, headphones, clothing, batteries, and food items. [*Id.*, p. 14-15].

At 4:00 p.m., Plaintiff told Marino about the assault. [*Id.*, p. 15]. Plaintiff requested that he be taken to the medical unit and to speak to the shift supervisor, Defendant Baker. [*Id.*]. When Plaintiff spoke to Baker, he accused Townsend, Upshaw and Marino of hiring inmates to assault him. [*Id.*]. He told Baker that no one had responded during and after the attack. [*Id.*]. He also advised Baker of the

prior threats by Townsend. [*Id*.]. Plaintiff requested protective management status in order to be protected from Townsend, Upshaw and Marino. [*Id*., p. 16]. Plaintiff also told Baker that he could identify the inmates who had attacked and robbed him. [*Id*.]. Plaintiff was then taken to medical. [*Id*.]. According to Plaintiff, Baker never investigated the attack. [*Id*.].

At the medical department Plaintiff told the nurses of the attack. [*Id*.]. The nurses called Dr. C. Berrios to examine him. [*Id*.]. Dr. Berrios prescribed pain medication and ordered x-rays to be taken. [*Id*.]. Plaintiff was never taken for x-rays or provided pain medication. [*Id*.]. On May 28, 2017, Plaintiff discovered blood in a bowel movement. [*Id*.]. He submitted a sick call request but was never called to be seen by a medical provider. [*Id*., p. 16-17].

On June 28, 2017, Plaintiff was denied his request for protective management by the classification team. [*Id*., p. 17]. He refused to be placed in the general population for several months. [*Id*.]. On October 19, 2017, Plaintiff was transferred to Mayo Correctional Institution Annex. [*Id*.]. At the time of his arrival his legal materials were searched via x-ray. [*Id*.]. Prison officials found two ice picks, ten razor blades and synthetic marijuana. [*Id*.]. According to Plaintiff, these items were placed there by prison officials at Dade Correctional Institution. [*Id*.].

### III.    Standard of Review- 28 U.S.C. §1915A

Pursuant to 28 U.S.C. § 1915(e)(2) and §1915A, where a prisoner seeks redress from a governmental authority, the complaint shall be screened to identify cognizable claims and dismiss any claims that are frivolous, malicious or fail to state a claim on which relief may be granted. *See Wright v. Miranda,* 740 F. App'x 692, 694 (11th Cir. 2018).

In reviewing the complaint under § 1915(e), the court takes the allegations as true and construes them in the most favorable light. *See Hughes v. Lott,* 350 F.3d 1157, 1159-60 (11th Cir. 2003); *Maps v. Miami Dade State Attorney*, 693 F. App'x 784, 785 (11th Cir. 2017)(*per curiam*). Complaints filed by *pro se* prisoners are held to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner,* 404 U.S. 519, 520 (1972)(*per curiam*). Although a *pro se* pleading is liberally construed, it must still "suggest that there is some factual support for a claim." *Wright v. Miranda,* 740 F. App'x 692, 694 (11th Cir. 2018)(citing *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017) (*per curiam*).

To "avoid dismissal for failure to state a claim, a complaint must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Wright v. Miranda,* 740 F. App'x at 694.

To state a claim for relief under § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law. *See Griffin v.*

*City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Under § 1915(e)(2)(B)(i), courts may dismiss as frivolous claims that are "based on an indisputably meritless legal theory" or "whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

A district court may not rewrite a pleading to include claims that were never presented. *See Barnett v. Hargett,* 174 F.3d 1128, 1133 (10th Cir. 1999). The court may also not construct a litigant's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993); or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). When read liberally, a *pro se* pleadings "should be interpreted 'to raise the strongest arguments that [it] suggest[s]." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)(quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

## IV.    Discussion

### A. First Amendment Retaliation Claim

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F. 3d 1235, 1248 (11th Cir. 2003). "A prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of his having filed a grievance

concerning the conditions of his imprisonment.'" *Id*. (quoting *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir.1989).

To state a First Amendment claim for retaliation, three elements are required. *Bennett v. Hendrix*, 423 F. 3d 1247, 1250 (11th Cir. 2005). A plaintiff must state that: (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and, (3) there was a causal relationship between the retaliatory action and the adverse effect on speech. *See Smith v. Mosley*, 532 F. 3d 1270, 1276 (11th Cir. 2008). *See also Smith v. Fla. Dep't of Corr.*, 713 F. 3d 1059, 1063 (11th Cir. 2013)(citing *Bennett* at 1250).

"A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F. 3d at 1254. Minor instances of retaliation would not chill a person of ordinary firmness. *Id.* at 1252. "To establish causation, the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights." *Moton v. Cowart*, 631 F. 3d 1337, 1341 (11th Cir. 2011)(citing *Mosley* at 1278).

Plaintiff has alleged that he submitted a grievance on March 22, 2017 in which he complained that supervisory officials were instructing other inmates to harass him. The next day he was assaulted and robbed by another inmate. He also alleges that he submitted grievances on March 26, 2017 and March 28, 2017 regarding the

failure to protect him from the March 23rd assault. Additionally, he contacted his attorney regarding his lack of medical care. His attorney sent an e-mail to the warden on April 14, 2017 which was forwarded to Defendant Baker. Four days later, Plaintiff was taken to see Baker, who showed him the e-mail.

On May 17, 2017, Plaintiff saw Defendant Upshaw speaking to an unknown inmate. On May 26, 2017, Baker, Townsend, Marino and Upshaw came to Plaintiff's dormitory to conduct a search and advised inmates that any excessive property or legal materials would be confiscated. Plaintiff complained to Townsend that he had a note from the prison librarian about his materials. Townsend was belligerent, called Plaintiff a snitch and a homosexual and had to be restrained. Several hours later two inmates assaulted Plaintiff. One of the inmates was the same one who Plaintiff had seen speaking with Upshaw on May 17. The beating continued for seventeen minutes and no officers intervened. Plaintiff remained in his dorm room for twenty-five minutes but no officer responded. Although Plaintiff reported this to Baker, there was no investigation. Plaintiff's requests for protective management were denied and he was transferred to a different facility on October 17, 2017. He has alleged that prison officials at Dade C.I. placed contraband in his legal materials which were discovered upon his arrival at the new facility.

These allegations support a *prima facie* claim for retaliation against the Defendants. He has alleged that Baker ignored his grievances and that Townsend

issued a threat to have him assaulted after he filed grievances. Shortly thereafter, Plaintiff was attacked. He has alleged that Upshaw arranged for him to be out of his cell and that one of the inmates who attacked him had been talking to Upshaw prior to the second assault. This claim should proceed against each of the Defendants.

## B.    Eighth Amendment Failure to Protect Claim

In a related claim, Plaintiff alleges that Defendants failed to protect him from violence at the hands of other prisoners. Plaintiff claims that the four Defendants conspired to have other inmates assault him and steal his property.

Prisons "must provide humane conditions of confinement; [they] must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832, (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir.2003) (per curiam) (quotations and alterations omitted).

In order to succeed on a claim of failure to protect, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Id*. (quotations, citations, and alterations omitted). "[M]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. at 1350 (quotations and alteration

omitted). "The known risk of injury must be a strong likelihood, rather than a mere possibility[,] before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.1990) (quotations omitted). Whether a plaintiff gave advance notice of a specific threat or of his fear of an inmate is relevant to this inquiry, *see Carter*, 352 F.3d at 1349-50, though it is not dispositive, *see Farmer*, 511 U.S. at 848, 114 S.Ct. 1970.

Plaintiff has presented a *prima facie* Eighth Amendment claim against Townsend, Marino and Upshaw. According to Plaintiff, defendant Townsend arranged for three inmates to assault him. Plaintiff has alleged that shortly after Townsend threatened to have him assaulted by fellow inmates he was attacked by inmates. He alleges that Marino ignored the assault and left him in his cell for nearly half an hour after the assault. He has alleged that Upshaw was seen speaking to one of the assailants prior to the assault. Plaintiff has not provided any allegations that Baker was present or involved in either of the assaults.

## C.     Fourteenth Amendment Failure to Return Stolen Property

Plaintiff has also claimed Defendants failed to return property that was stolen by other inmates. This claim concerning his loss of property is not cognizable under §1983. The Supreme Court has held that the negligent deprivation of property does not amount to a constitutional violation actionable under §1983. *Daniels v. Williams*, 474 U.S. 327, 330, 333 (1986) (holding that the Due Process Clause is not implicated

by a state official's negligent act causing unintended loss of or injury to life, liberty, or property). The Supreme Court has further held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

Plaintiff has alleged that the property was taken at the direction of the Defendants, meaning that it was an intentional deprivation of property. The State of Florida provides Plaintiff with an adequate post-deprivation remedy for the loss of his property. Prisoners may file a tort claim action in state court in order to recover damages for property losses. *See* Fla.Stat. §768.28 (2011). Since there is a meaningful remedy for the loss of property, this claim should be dismissed for failure to state a claim upon which relief can be granted.

**D. Fourteenth Amendment Failure to Call Witnesses to Attack**

Plaintiff asserts that each of the Defendants failed to undertake an adequate investigation and failed to interview witnesses to the assaults. He raises this as due process claim under the Fourteenth Amendment.

Plaintiff's allegations do not rise to the level of a violation of his federal constitutional rights. The failure to investigate Plaintiff's claims in a manner satisfactory to Plaintiff is not a constitutional violation. *See Vinyard v. Wilson*, 311

F.3d 1340, 1356 (11th Cir. 2002) (holding that there was no constitutional right to an investigation following a violent incident based upon which the plaintiff raised a claim of excessive force); *see also Stinger v. Doe*, 503 F. App'x 888, 8891 (11th Cir. 2013 (same)); *Mallory v. Hetzel*, No. 2:12-CV-1044-WHA, 2016 WL 5030469, *14 (M.D. Ala. 2016) (inmates simply do not enjoy a constitutional right to an investigation of any kind by government officials). Since there is no violation of a constitutional right, this claim should be dismissed for failure to state a claim upon which relief can be granted.

**E. Fourteenth Amendment Equal Rights Violation**

Plaintiff has also raised an equal protection claim. The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To establish such a claim, a prisoner can allege that: "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (internal quotations omitted); *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986). If a suspect classification, such as race, or a fundamental right is implicated, a court must apply strict scrutiny to that claim. *See Johnson v. California*, 543 U.S.

499, 506-07 (2005) (holding that strict scrutiny is the appropriate standard of review for racial classifications even in the prison context).

Plaintiff has made a conclusory allegation that he was treated differently than two similarly situated inmates. However, Plaintiff has not alleged the manner in which he was treated differently nor has he alleged that he was treated differently because of some improper classification. In the absence of any such allegations, this claim should be dismissed as to all defendants for failure to state a claim.

**F. Eighth Amendment Deliberate Indifference to Medical Needs Claim**

Plaintiff claims Baker, Upshaw and Townsend ignored his requests for medical attention. Plaintiff claims he sought medical attention after both assaults. He received no medical care after the first assault, and, although he received an initial medical exam after the second assault, he received no further treatment.

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment that they receive while in prison. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). The Supreme Court has interpreted the Eighth Amendment to prohibit "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). The Eleventh Circuit has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence." For instance, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to

obtain medical treatment for the inmate." *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997) (overruled on other grounds by *LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009)). The "deliberate indifference" standard may be met in instances where a prisoner is subjected to repeated examples of delayed, denied, or grossly incompetent or inadequate medical care; prison personnel fail to respond to a known medical problem; or prison doctors take the easier and less efficacious route in treating an inmate. *See, e.g., Harris v. Coweta Cty.*, 21 F.3d 388, 393-94 (11th Cir. 1994) (indicating prison officials may nonetheless act with deliberate indifference for delaying treatment beyond a tolerable point); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating failure to respond to known medical problems or to take a less efficacious course of treatment can amount to deliberate indifference).

The Eleventh Circuit has instructed that, claims based on a delay in medical care, courts should consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cty.,* 510 F.3d 1312, 1327 (11th Cir. 2007). Moreover, for a delay in medical treatment to rise to the level of a constitutional violation, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. . ." *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S.

730 (2002).

A deliberate indifference claim contains an objective component that requires a plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him "the minimal civilized measure of life's necessities." *Hudson v. McMillian,* 503 U.S. 1, 8-9 (1992). "[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Center,* 40 F.3d 1176, 1187 (1994)(citations omitted), *overruled in part on other grounds, Hope v. Pelzer,* 536 U.S. 730, 739 n.9 (2002); *Andujar v. Rodriguez,* 486 F.3d 1199, 1203 (11th Cir. 2007). "[T]he medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003)(quotation marks and citations omitted).

In addition to an objective component, a prisoner must establish: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference. *See Hill v. Dekalb Reg'l Youth Det. Center,* 40 F.3d at 1190 n. 26; *H. C. by Hewett v. Jarrad*, 786 F.2d 1080, 1086 (11th Cir. 1986)(citing *Ancata v. Prison*

*Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)).

Plaintiff alleges that Baker, Marino, Townsend and Upshaw were aware of his injuries. He has alleged that he explained that he had been assaulted and injured to Assistant Warden Jones. However, he has not alleged that he asked any of the named defendants for medical attention regarding the first assault. Further, his allegations regarding his injuries do not show that he was in serious need of medical care after the first assault. There has been no showing that his minor injuries, if left unattended, posed a substantial risk of serious harm.

As to the second assault, Plaintiff alleges that he asked Marino for medical attention. He has not alleged that he asked any of the other defendants for medical attention. According to Plaintiff, he was taken to the medical department where he was seen by a doctor. The doctor prescribed pain medication and ordered x-rays, however, he received no pain medication and no x-rays were taken. Plaintiff has not alleged that any of the named defendants denied him medical care.

The facts as alleged fail to state a *prima facie* claim of deliberate indifference to a serious medical need on the part of the Defendants. None of the named Defendants were responsible for the lack of medical attention. Plaintiff did not express a need for medical care to any of the named Defendants after the first assault and his injuries from that assault appear to have been minor. Plaintiff only expressed a need for medical attention to Marino after the second assault. As a result, Plaintiff

- 19 -

was taken to the medical department and seen by a doctor. Plaintiff has not alleged that the named Defendants were responsible for the lack of follow up on the initial medical care. Therefore, the claims of deliberate indifference to a serious medical need against each of Defendants should be dismissed for failure to state a claim.

## G. Supervisory Liability

Plaintiff repeats the phrase "supervisory officials" in a number of his claims for relief. However, the complaint names each of the Defendants as direct participants in the alleged constitutional violations. The addition of the phrase "supervisory officials" does not appear to add any substance to Plaintiff's claims. Since Plaintiff has raised claims against each of the Defendants based on their personal participation there is no need to rely on supervisory liability.

## V. Recommendations

Based upon the foregoing, it is recommended that:

(1)     the First Amendment retaliation claim should proceed against each of the Defendants;

(2)     the Eighth Amendment claims against Townsend, Marino and Upshaw for the May 26, 2017 incident should proceed;

(3)     the Eighth Amendment claim against Baker for the May 26, 2017 incident should be dismissed for failure to state a claim;

(4)     the Fourteenth Amendment claims for failure to return stolen property and failure to call witnesses should be dismissed for failure to state a claim;

(5)     the Fourteenth Amendment Equal Rights claim should be dismissed;

(6)     the Eighth Amendment claim for deliberate indifference to medical needs should be dismissed for failure to state a claim; and;

(7)     the supervisory liability claims should be dismissed as superfluous.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the District Judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. §636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

SIGNED this 7th day of April, 2020.

UNITED STATES MAGISTRATE JUDGE

cc:   Terry Eugene Sears
      B-083117
      Zephyrhills Correctional Institution
      Inmate Mail/Parcels
      2739 Gall Boulevard
      Zephyrhills, FL 33541
      PRO SE